**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

PRAIRIE LANDWORKS, INC.,

*Plaintiff,*

v.

GEO-SYNTHETICS SYSTEMS, LLC,

*Defendant.*

GEO-SYNTHETIC SYSTEMS, LLC,

*Third-Party Plaintiff,*

v.

WEAVER CONSULTANTS GROUP, LLC,
SOLMOX GEOSYNTHETICS, LLC, and
GROUPE SOLMAX, INC.,

*Third-Party Defendants.*

Case No. 24-cv-1169-EFM

**MEMORANDUM AND ORDER**

Plaintiff Prairie Landworks, Inc. ("PLI") brings this action against Defendant Geo-Synthetic Systems, LLC ("GSI") alleging that GSI breached the contract between the parties when GSI failed to deliver a pond liner system conforming to the contract's requirements. This matter comes before the Court on (1) GSI's Motion for Summary Judgment (Doc. 75); (2) GSI's Renewed Motion for Summary Judgment Concerning Contractual Limitations of Liability (Doc. 76); and (3) GSI's Motion for Sanctions (Doc. 73). For the following reasons, the Court denies GSI's motions.

# I. Factual & Procedural Background

## A. Facts Pertaining to GSI's Motions for Summary Judgment

### *1. Compliance with Rule 56 and D. Kan. Rule 56.1*

Before setting forth the uncontroverted facts governing GSI's summary judgment motions, the Court must address GSI's contention that PLI failed to controvert GSI's statements of facts in the manner required by the Federal Rules of Civil Procedure and the District of Kansas Local Rules.

Federal Rule of Civil Procedure 56 requires a party disputing a fact to "cit[e] to particular parts of materials in the record."[1] When the nonmovant "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed."[2] Similarly, this District, through Local Rule 56.1(b)(1), requires a nonmovant to controvert the movant's facts specifically, or they may be deemed admitted.[3] "Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and if applicable, state the number of movant's fact that is disputed."[4]

When responding to GSI's statements of material facts, PLI often sets forth narrative statements without any reference to the record. To the extent PLI is attempting to controvert GSI's facts in this manner, the Court deems them admitted. To the extent GSI is offering these statements

---

[1] Fed. R. Civ. P. 56(c)(1)(A).

[2] Fed. R. Civ. P. 56(e)(2).

[3] D. Kan. Rule 56.1(a) and (b).

[4] D. Kan. Rule 56.1(b)(1).

as additional information to the Court, they are disregarded. The Court considers only those statements by GSI that are supported by citation to the record.

*2. Uncontroverted Facts*

PLI and GSI entered into a subcontract agreement on November 1, 2021 (the "Subcontract"), under which GSI acted as PLI's subcontractor for supplying and installing a pond liner system to line a brine detention pond. The brine detention pond supports a natural gas facility owned by Willams Field Services, LLP ("Williams" or "the owner") in Conway, Kansas. The Subcontract required GSI to conform to project plans, certain installation and testing guidelines, referenced technical standards, and regulatory requirements.

Paragraphs 16, 18, and 25 of the Subcontract are pertinent to GSI's motions. Section 16 sets forth the warranty provision as follows:

> [GSI] agrees that all work performed, material and equipment furnished by [GSI] under this contract or any supplemental, additional, or other contract (verbal or written) will conform to the drawings and specifications, as herein before provided as to kind, quality, function of equipment and characteristics of material and workmanship and will remain so for a guaranty period of one year from date of (a) substantial completion of [GSI's] work. [GSI] hereby agrees at [GSI's] expense, during the warranty period specified in this Section 16, immediately upon notice from PLI or its respective successors and assigns to correct, repair and make good any work, materials and equipment furnished by [GSI] under this contract.

Section 18 of the Subcontract sets forth the procedure for termination of the Subcontract as follows:

> Should [GSI] fail to prosecute [sic] the work properly and with due diligence, become insolvent, or fail to perform any of the provisions of this agreement when required, PLI upon (5) day's written or oral notice to [GSI] AND [GSI's] failure to initiate cure within such 5-day period, may make good the deficiencies and charge the [GSI] therefore, or may terminate this contract.

Section 25, titled "Limitation of Liability," states:

> The liability of [GSI] on all claims of any kind (excluding death or bodily injury) for all losses or damages arising out of or resulting from this contract shall in no case exceed the amount payable to [GSI] pursuant to this Subcontract Agreement. In no event shall [GSI] be liable to PLI for any special, indirect, or consequential damages under any cause or form of action whatsoever.

GSI installed the liner system sometime around September 2022.[5] The liner system, however, was defective. GSI attempted to cure the defects in the system, which included installing a new primary geomembrane liner above the primary liner.[6]

By June 2023, the new primary liner was installed, had passed all required testing, and had been turned over to Williams. On July 20, 2023, Williams began filling the pond with brine. That same day, Williams detected leakage exceeding the limits allowed by the Kansas Department of Health and Environment, prompting Williams to stop filling the pond and dewater it.

GSI began investigating, performing tests, and repairing the leaks through its own team, its expert, and outside contractors. On August 30, 2023, GSI offered PLI a repair plan, which GSI was ready to implement immediately, and asked PLI permission to proceed with the repairs.

While GSI was waiting for a response, PLI secretly began soliciting EnviroCon, another geosynthetic liner installer, to replace GSI on the project. On September 12, GSI followed up with PLI, asking if GSI is permitted to implement the proposed repair plan. GSI also requested permission from PLI to return to the site to gather additional samples to continue working to identify the root cause of the leaks. PLI did not respond to GSI immediately. Instead, PLI's

---

[5] The parties dispute whether PLI accepted GSI's work on September 21, 2022. The original liner system was composed of two liners, a primary liner which was on top of a secondary liner.

[6] Once a liner layer is covered with a later-installed liner, it can no longer be seen, inspected, tested or repaired without removal of the layer above it.

President reported to Williams that it was not willing to have GSI back to the project site unless Williams directed him to do so.

On September 21, 2023, PLI's President informed GSI by email that "Williams is not willing to have GSI perform further work on this project." PLI concedes that this email effectively terminated the Subcontract. By that time, GSI had spent an additional $1.7 million in its attempts to repair the liner system. PLI continued to bar GSI from the project site and did not pay GSI the remaining $66,383.11 it owed GSI under the Subcontract.

**B. Additional Facts Pertaining to GSI's Motion for Sanctions**

By October of 2023, PLI had retained counsel and an expert, Edward Zimmel, to inspect the liner system and opine on the root cause of the leaks. On October 18, PLI's counsel sent GSI's general manager a copy of Zimmel's report regarding the liner system's deficiencies. The letter also informed GSI that GSI would not be allowed to perform any additional testing on the project site.

Counsel for GSI responded by a letter dated November 3, 2023, informing PLI of the following: (1) GSI intended to respond to Zimmel's report but because PLI refused to allow GSI on site, it would not be able to perform a full evaluation of Zimmel's allegations; (2) PLI's refusal to allow GSI on site for testing would greatly prejudice GSI and serve as the basis for a spoliation claim; (3) PLI must preserve all data, documents, and materials related to the project and "all allegedly defective materials or workmanship"; and (4) PLI's refusal to allow GSI to fulfill its warranty obligations violated the terms of the Subcontract. PLI did not respond to GSI's letter.

About a month later, PLI's replacement contractor, EnviroCon, informed PLI that it intended to dispose of GSI's liner system. In mid-January 2024, PLI sought William's approval for the replacement plan. William's approved the plan, and removal began on February 19, 2024.

The liners were heavy and large, covering more than 20 acres. PLI stored the liners on the project site until they were disposed of in a landfill. PLI did, however, retain samples of the liners. PLI offered to make the samples available for inspection to GSI, but GSI did not accept the offer.

**C. This Litigation**

PLI originally filed suit in McPherson County District Court, and GSI removed it to this Court in September 2024. PLI claims that GSI breached the Subcontract by failing to deliver an acceptable and conforming pond liner and by performing work that was defective, negligent, and not completed in a workmanlike manner. PLI seeks damages in the amount of $2,010,025.99—the Subcontract price. GSI asserts a counterclaim for breach of contract against PLI alleging that PLI did not complete the payment required by the Subcontract. GSI seeks damages in the amount of $66,383.11—the outstanding amount owed on the Subcontract.

At the beginning of discovery, GSI filed a motion for partial summary judgment asking the Court to construe the limitation of liability provision in the Subcontract in its favor. Specifically, GSI asked the Court to determine whether the money it expended remediating the pond liner system could be credited toward the limitation of liability provision in the Subcontract. The Court held that it could not and thus denied GSI's motion for partial summary judgment.

GSI has now filed two additional motions for summary judgment. In its first motion, GSI asks the Court to find that PLI's claims fail as a matter of law because PLI terminated the Subcontract without complying with the Subcontract's termination provision. In its second motion, GSI asks the Court to revisit its prior Order denying summary judgment as to the limitation of liability provision in the Subcontract. GSI contends that evidence became available during discovery that requires the Court to reconsider its previous ruling.

Finally, GSI has also filed a Motion for Sanctions against PLI arguing that PLI spoliated evidence when it removed the pond liner system without providing GSI an opportunity to inspect it. GSI seeks (1) dismissal of PLI's Complaint; (2) an order striking Zimmel's expert report and precluding him from testifying on PLI's behalf; (3) an order precluding PLI from introducing any evidence gathered after August 22, 2023—the date GSI was last permitted access to the project site; (4) an adverse jury instruction; and (5) GSI's attorneys' fees in bringing its Motion for Sanctions.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[7] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[8] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[9] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[10] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone

[7] Fed. R. Civ. P. 56(a).

[8] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[9] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[10] *Id.* (citing Fed. R. Civ. P. 56(e)).

cannot survive a motion for summary judgment.[11] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[12]

**B. Sanctions Standard**

"As a general rule, '[s]poliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[13] A court has broad discretion to impose spoliation sanctions and has a "substantial weaponry" of sanctions within its "arsenal to shape the appropriate relief for a party's spoliation of evidence."[14] "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."[15] Among the options, a court may strike witnesses, issue an adverse inference, exclude evidence, or in "extreme circumstances, dismiss a party's claims."[16]

---

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[12] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[13] *EEOC v. JetStream Ground Serv., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017) (alteration in original) (citation omitted).

[14] *Helget v. City of Hays,* 844 F.3d 1216, 1225 – 26 (10th Cir. 2017).

[15] *Id.* at 1226 (citation omitted).

[16] *Id*. The Court notes, however, that to impose an adverse inference instruction as a sanction it must also find that the party who spoliated the evidence acted in bad faith. *Zbylski v. Douglas Cnty. Sch. Dist.,* 154 F. Supp. 3d 1146, 1171 – 72 (D. Colo. 2015) ("Where the party claiming prejudice seeks an adverse inference to remedy the *1172 spoliation, it must also prove bad faith.") (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149-50 (10th Cir. 2009))).

## III. Analysis

### A. GSI's First Motion for Summary Judgement (Doc. 75)

GSI asserts two arguments as to why the Court should grant summary judgment on PLI's breach of contract claim. First, GSI argues that PLI cannot enforce the Subcontract because PLI breached the agreement first when it violated the Subcontract's termination provision. Second, GSI argues that PLI cannot enforce the Subcontract because PLI prevented GSI from performance when PLI refused to allow GSI to enter the project site and cure the liner's deficiencies. The Court addresses each of GSI's arguments below.

#### *1. First to Breach Doctrine*

Under the first to breach doctrine, "[a] party is not liable for a material failure of performance if it can show that the other party committed a prior material breach of the contract; in such event, the prior breach discharged the party's own duty to perform."[17] This rule "precludes a party who has first materially breached a contract from attempting to enforce that contract until the breach is cured and entitles the nonbreaching party to suspend or terminate performance under that contract as long as the breach remains uncured."[18] To prevail on this defense, GSI must establish a prior breach by PLI that is material.

GSI contends that PLI unilaterally excluded GSI from the project, barred GSI from accessing the site to perform repairs, and terminated the Subcontract without providing the

[17] *Hawley v. Shear*, 2023 WL 2784838, at *4 (D. Kan. Apr. 5, 2023) (quoting *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 1997 WL 51227, at *15 (D. Kan. Jan. 23, 1997) (applying Kansas law)); *see also Alenco, Inc. v. Warrington*, 65 Kan. App. 2d 79, 560 P.3d 586, 596 (2024) ("When a party materially breaches a contract, they are precluded from enforcing the contract against the nonbreaching party until the material breach has been cured." (citing *Bank of Am. v. Narula*, 46 Kan. App. 2d 142, 261 P.3d 898, 902 (2011))).

[18] *Hawley*, 2023 WL 2784838, at *4 (quoting *Bank of Am., N.A.*, 261 P.3d at Syl. ¶ 3).

Subcontract's required notice of default.[19] It is true that the Subcontract requires PLI to give GSI notice before it may terminate the agreement. And the parties dispute whether PLI gave GSI this notice. However, the Court need not resolve this dispute because even if the Court concludes PLI breached the termination provision, GSI does not establish that this breach was material or occurred first.

As to materiality, a breach is material if the other party "receives something substantially less or different from that for which he bargained."[20] Kansas courts look to the factors set forth in the Restatement of Contracts when analyzing whether a breach is material.[21] Materiality is a question of fact to be determined from the circumstances of each case.[22]

Here, GSI does not offer any argument as to materiality. It does not identify the Restatement of Contract factors or cite any case law. Instead, GSI focuses solely on how PLI breached the termination provision and then simply calls that breach a "material breach." The Court thus finds that Defendant does not meet its burden to show that a reasonable jury would find PLI's breach of section 18 to be material based on the facts of this case.

As to whether PLI's breach occured first, PLI argues that there are genuine issues of material fact as to which party breached the Subcontract first. The parties stipulate in the Pretrial

---

[19] As noted above, the Subcontract's termination states:

> Should [GSI] fail to prosecute [sic] the work properly and with due diligence, become insolvent, or fail to perform any of the provisions of this agreement when required, PLI upon (5) day's written or oral notice to the [GSI] AND [GSI's] failure to initiate cure within such 5-day period, may make good the deficiencies and charge [GSI] therefore, or may terminate this contract.

[20] *Deffenbaugh Indus., Inc. v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 2021 WL 6072508, at *25 (D. Kan. Dec. 23, 2021) (quoting *Almena State Bank v. Enfield,* 24 Kan. App. 2d 834, 954 P.2d 724, 727 (1998)).

[21] *Id.* (citing Restatement (Second) of Conts. § 241 (1979)).

[22] *Id*. (citing *Almena State Bank*, 954 P.2d at 727).

Order that GSI attempted to cure defects in the original liner system, and then, when a new primary liner was installed, it also leaked. PLI also proffers testimony from the project owner's representative stating that the new liner installed by GSI leaked and was defective, thus defeating the Subcontract's requirement for GSI to install a pond liner meeting certain specifications. The alleged failure of the pond liners occurred before PLI terminated the contract through the September 21, 2023 email. Thus, even if PLI breached the termination provision of the Subcontract, there are genuine issues of material fact as to whether GSI or PLI breached the Subcontract first.

Accordingly, the Court finds that questions of fact preclude summary judgment on GSI's first material breach defense. Therefore, the Court denies summary judgment on this basis.

2. *The Prevention Doctrine Defense*

At the conclusion of its Motion, GSI briefly invokes the prevention doctrine, arguing that this doctrine precludes PSI from asserting GSI breached the Subcontract. "It has long been held that a party may not prevent performance of the contract by the other party and yet claim benefits under the contract."[23] Under the doctrine of prevention, "a party to a contract cannot derive any benefit or escape any liability from his own failure to cause or failure to seek the happening of a condition precedent."[24]

GSI's argument is largely undeveloped, consisting of a single sentence in its opening brief and footnote in its Reply. In the footnote, GSI argues that PLI barred GSI from the site after GSI stood ready to initiate a cure, independently precluding any claim that GSI failed to perform. But

---

[23] *475342 Alberta, Ltd. v. Starfire*, 1996 WL 370221, at *7 (D. Kan. June 19, 1996) (quoting *Resol. Tr. Corp. v. Winchester Inns, Inc.*, 1993 WL 189577, at *4 (D. Kan. May 7, 1993)).

[24] *Id*. (quoting *Morton Bldgs., Inc. v. Dep't of Hum. Res.*, 10 Kan. App. 2d 197, 695 P.2d 450, 454 (1985)).

GSI stipulates in the Pretrial Order that it "attempted to correct and cure deficiencies in its work on the Project" and "GSI, in an effort to cure defects in its work, installed a new primary geomembrane liner above the original primary liner on the Project." GSI does not address where or how the Subcontract requires PLI to give GSI multiple opportunities to cure. Accordingly, the Court finds that there are genuine issues of material fact regarding whether PLI hindered or made GSI's performance of the Subcontract impossible.

The Court understands that this ruling leaves many unresolved issues for trial. The Court, however, is unable to resolve the case on the record and arguments before it. Accordingly, Defendant's Motion for Summary Judgment is denied, and PLI's breach of contract claim will proceed to trial.

**B. GSI's Renewed Motion for Summary Judgment (Doc. 76)**

In its Renewed Motion for Summary Judgment, GSI asks the Court to reconsider its November 19, 2025 Order denying GSI's motion for partial summary judgment.[25] That Order addressed whether the money GSI expended to remediate defective work could be credited towards GSI's liability based on the limitation of liability provision in the Subcontract.[26] The Court held that it could not, stating:

> The language of paragraph 25 unambiguously provides that in the event of GSI's breach, GSI's liability to PLI is limited to reimbursement of the amount PLI paid to GSI under the contract. As PLI asserts, the phrase "all losses or damages arising out of or resulting from this contract" refers to losses or damages incurred by PLI,

[25] Doc. 57.

[26] The limitation of liability provision, paragraph 25 of the Subcontract, states:

> The liability of [GSI] on all claims of any kind (excluding death or bodily injury) for all losses or damages arising out of or resulting from this contract shall in no case exceed the amount payable to [GSI] pursuant to this Subcontract Agreement. In no event shall [GSI] be liable to PLI for any special, indirect, or consequential damages under any cause or form of action whatsoever.

> not claims for warranty expenses incurred by GSI. The only party that suffers losses and damages in the event of GSI's breach is PLI.

The Court noted that even if GSI's expenses qualified as warranty expenses under paragraph 16 of the Subcontract,[27] the limitation of liability provision does not allow the expenses to be credited towards GSI's limitation of liability. According to the Court, to hold otherwise would "vitiate the warranty provision of the Subcontract." The Court explained:

> Under GSI's interpretation, if GSI incurs warranty expenses but still fails to repair the defective work, PLI is left with no recourse against GSI. In essence, PLI would be paying GSI for work it did not receive and then paying a second company to do that work. The more reasonable interpretation of the Subcontract is that PLI should be reimbursed for the money it paid GSI for the work that GSI failed to provide.

GSI now asks the Court to reconsider its decision based on facts that became available during discovery. According to GSI, the Court erroneously assumed that GSI abandoned the project without completing it, when in fact, it is undisputed that GSI completed its work, PLI accepted it, and GSI demobilized from the site. GSI further argues that the remediation work was warranty work furnished at PLI's request and for PLI's benefit and thus are not losses or damages to GSI. According to GSI, these warranty expenses must be considered when applying an aggregate liability cap that limits GSI's exposure on "all claims of any kind."

The Court disagrees. The Court did not assume that GSI abandoned its work and did not base its holding on this assumption. Furthermore, the new facts GSI relies upon are immaterial

---

[27] Paragraph 16 of the Subcontract sets forth GSI's warranty to PLI as follows:

> [GSI] agrees that all work performed, material and equipment furnished by [GSI] under this contract or any supplemental, additional, or other contract (verbal or written) will conform to the drawings and specifications, as herein before provided as to kind, quality, function of equipment and characteristics of material and workmanship and will remain so for a guaranty period of one year from date of (a) substantial completion of [GSI's] work. [GSI] hereby agrees at [GSI's] expense, during the warranty period specified in this Section 16, immediately upon notice from PLI or its respective successors and assigns to correct, repair and make good any work, materials and equipment furnished by the [GSI] under this contract.

and merely rehash GSI's previous arguments. GSI claims that it is now undisputed that the remediation expenses are warranty expenses that must be included in GSI's limitation of liability. But, the Court already rejected this argument in its previous Order, stating that even if the remediation expenses are warranty expenses, they are not covered by the limitation of liability provision. GSI's updated facts do not alter the Court's previous ruling. Thus, the Court denies summary judgment on this basis.

GSI also argues that the Court's prior Order erroneously assumed that GSI was in breach of the Agreement, and the undisputed facts show that it was not. In the alternative, GSI argues that even if it was in breach, PLI's damages must be limited because contractual limitations of liability preclude an injured party from recovering more than what the parties agreed upon. The Court rejects the first argument as it has already found there are genuine issues of material fact as to whether GSI breached the Subcontract. And the Court rejects the second argument as duplicative of its prior motion. Accordingly, the Court sees no basis to disturb its prior ruling construing the limitation of liability provision. GSI's Renewed Motion for Summary Judgment is denied.

### C. GSI's Motion for Sanctions (Doc. 73)

Finally, the Court turns to GSI's Motion for Sanctions against PLI based on spoliation of evidence. GSI contends that PLI disposed of the pond liners thereby breaching its duty to preserve relevant evidence. GSI further contends that this destruction of evidence was in bad faith and precludes GSI from a fair trial, and thus the Court must impose sanctions against PLI.

Litigants have a duty to preserve relevant evidence when they "knew, or should known, that litigation was imminent."[28] If a litigant destroys such evidence and if that destruction prejudices the adverse party, a court may sanction the litigant who destroyed the evidence.[29] This power is invested in the courts through Federal Rule of Civil Procedure 37(c)(1) and through the courts' "broad inherent power to sanction misconduct and abuse of the judicial process."[30]

The Court first addresses whether PLI had a duty to preserve the pond liners because it "knew, or should have known, that litigation was imminent."[31] Although this duty ordinarily arises when the lawsuit is filed, it may also arise earlier, including upon the filing of a discrimination charge or the receipt of a demand letter or an evidence preservation letter.[32] Here, PLI's duty to preserve arose when GSI's counsel sent its November 3, 2023 letter to PLI's counsel requesting that PLI preserve all materials related to the project.

PLI argues that it had no duty to preserve the liners because they belonged to Williams and were located on Williams's property. But PLI's duty extends to materials in its possession, custody, or control, and "'control comprehends not only possession but also the right, authority,

---

[28] *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Invs. I, L.P. v. Square D. Co*., 470 F.3d 985, 989 (10th Cir. 2006)).

[29] *Id.*

[30] *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43– 45 (1991)).

[31] *Burlington N.*, 505 F.3d at 1032.

[32] *See Willmore v. Savvas Learning Co., LLC*, 2024 WL 4869426, at *3 (D. Kan. Nov. 22, 2024) (citing *O'Berry v. Turner*, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) (finding duty to preserve arose when injured party's counsel faxed a spoliation letter demanding preservation by defendants); *Hawley v. Mphasis Corp.*, 302 F.R.D. 37 (S.D.N.Y. 2014) (holding employer had obligation to preserve relevant evidence on employee's laptop at least as early as its receipt of employee's second EEOC charge alleging employment discrimination); *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 299 F.R.D. 502, 512 (S.D. W. Va. 2014) ("Before litigation begins, courts agree that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.")).

or ability to obtain' the information."[33] PLI states in its Response that the Subcontract required PLI to remove and replace any failed liner system, and that it hired EnviroCon to remove the liners from the project site. This shows that PLI could decide who would remove the liners and how and where they would be disposed of, thus indicating that PLI exercised control over the liners at the time of their disposal.

PLI also argues that the burden and expense to store the liners discharges any duty it may have had to preserve them. According to PLI, the liners had to be removed because they were indefinitely delaying the project. Storage of the liners would have required a substantial investment as they covered an area of more than 20 acres and were possibly covered in salt brine.

The Court recognizes that the duty to preserve evidence is not unlimited.[34] Other courts have recognized in limited circumstances that a party may destroy evidence after giving the opposing party notice and a full and fair opportunity to inspect it.[35] Here, PLI did not give GSI notice that it was removing the pond liners from the project site nor did it give GSI an opportunity

---

[33] *Ol Priv. Counsel, LLC v. Olson*, 2024 WL 1973340, at *4 (D. Utah May 3, 2024) (quoting *Super Film of Am. Inc., v. UCB Films, Inc*., 219 F.R.D. 649, 653 (D. Kan. 2004)).

[34] *See Okla. Farm Bureau Mut. Ins. Co. v. Omega Flex, Inc*., 2023 WL 7288737, at *2 (W.D. Okla. Nov. 3, 2023) (finding that a litigant complied with its duty to preserve evidence when it provided the opposing party notice and an opportunity to inspect a home before it was demolished).

[35] *See id*. (citing *Toman Eng'g Co. v. Koch Constr., Inc.*, 974 N.W.2d 680, 687 (N.D. 2022) ("The duty to preserve evidence is not unlimited, and a party may reasonably need to destroy evidence that it has a duty to preserve. Other courts have recognized that under some limited circumstances a custodial party may destroy evidence after discharging the duty to preserve by giving the opposing party notice that allows for a full and fair opportunity to inspect the evidence."); *Thiele v. Oddy's Auto and Marine, Inc.*, 906 F. Supp. 158, 162-63 (W.D.N.Y. 1995) (denying a spoliation sanction requested by a defendant who had inspected the evidence before it was destroyed, while granting a spoliation sanction requested by a third-party defendant who was not provided an opportunity to inspect the evidence); *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290-91 (M.D. Pa. 1994) ("The scope of the duty to preserve evidence is not boundless. At a minimum, however, an opportunity for inspection should be afforded a potentially responsible party before relevant evidence is destroyed." (internal quotation marks and citations omitted))).

to inspect the pond liners at the project site after receiving GSI's preservation letter. Thus, PLI's removal of the pond liners constitutes spoliation.

This finding, however, does not resolve whether sanctions are warranted. GSI must still establish that it was prejudiced by PLI's conduct.[36] GSI argues it suffered prejudice because it could not inspect the liners in response to the report prepared by PLI's expert, Edward Zimmel, and prepare an adequate defense. In response, PLI argues that GSI was not prejudiced by the removal of the liners because GSI had already conducted its own inspection in July and August of 2023. During that time, GSI's crew tested and made repairs to the liners, GSI's own expert inspected the liners, and GSI had third parties on site to inspect and run tests on the liner system.

GSI did not file a reply responding to PLI's argument. Thus, GSI does not dispute that it had the opportunity to inspect the liners before litigation commenced nor does GSI explain why its own inspection was inadequate to address Zimmel's report or prepare a defense in this case. Moreover, as PLI notes in its response, PLI retained samples of the liners and offered GSI the opportunity to inspect and test these samples. GSI did not avail itself of this opportunity. The samples may be inadequate, but the Court has no way of knowing this because GSI does not respond to PLI's arguments or offer any evidence as to how they are inadequate.

At most, the record shows that GSI lost the opportunity to perform an additional inspection of the liners. GSI does not show that this lost inspection meaningfully prejudiced its ability to respond to Plaintiff's expert report, develop its claims and defenses, or otherwise litigate this case.

---

[36] *Burlington N.*, 505 F.3d at 1032.

Without evidence of prejudice, sanctions are not warranted. GSI's Motion for Sanctions is denied.[37]

As a final point, the Court emphasizes that nothing in this ruling should be construed as condoning the spoliation of evidence. Although the Court does not issue an adverse inference instruction or any other sanction against PLI, GSI may still introduce at trial the facts surrounding PLI's removal and destruction of the liners without giving GSI notice and further opportunity for inspection.

**IT IS THEREFORE ORDERED** that GSI's Motion for Summary Judgment (Doc. 75) is **DENIED**.

**IT IS FURTHER ORDERED** that GSI's Renewed Motion for Summary Judgment Concerning Contractual Limitation of Liability (Doc. 76) is **DENIED**.

**IT IS FURTHER ORDERED** that GSI's Motion for Sanctions (Doc. 73) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of September, 2026.

Eric F. Melgren

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[37] Because the Court finds that GSI does not establish prejudice, the Court declines to consider GSI's argument that PLI's disposal of the liners was in bad faith.